FILED

DEC - 4 2009

E-filing

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

ADR

C09   05731   HRL

1  ROBBINS UMEDA LLP
   MARC M. UMEDA (197847)
2  mumeda@robbinsumeda.com
   GEORGE C. AGUILAR (126535)
3  gaguilar@robbinsumeda.com
   ARSHAN AMIRI (246874)
4  aamiri@robbinsumeda.com
   DAVID L. MARTIN (253858)
5  dmartin@robbinsumeda.com
   600 B Street, Suite 1900
6  San Diego, CA  92101
   Telephone: (619) 525-3990
7  Facsimile: (619) 525-3991

8  Attorneys for Plaintiff

9

10                    UNITED STATES DISTRICT COURT

11                    NORTHERN DISTRICT OF CALIFORNIA

12  RICHARD LOGAN, Derivatively on          )   Case No.
    Behalf of SUNPOWER CORPORATION,         )
13                                          )   VERIFIED SHAREHOLDER DERIVATIVE
                    Plaintiff,              )   COMPLAINT FOR BREACH OF
14                                          )   FIDUCIARY DUTY, WASTE OF
          v.                                )   CORPORATE ASSETS AND UNJUST
15                                          )   ENRICHMENT
    THOMAS H. WERNER, DENNIS V.             )
16  ARRIOLA, EMMANUEL T.                    )
    HERNANDEZ, W. STEVE ALBRECHT,           )
17  BETSY S. ATKINS, PAT WOOD, III,         )
    THOMAS R. MCDANIEL, THURMAN J.          )
18  RODGERS, and UWE-ERNST BUFE,            )
                                            )
19                  Defendants,             )
                                            )
20        v.                                )
                                            )
21  SUNPOWER CORPORATION, a                 )
    Delaware corporation,                   )
22                                          )
                    Nominal Defendant.      )
23  _____ )   DEMAND FOR JURY TRIAL

24

25

26

27

28

_____
                VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

BY FAX

Plaintiff, by his attorneys, submits this Verified Shareholder Derivative Complaint (the "Complaint") against the defendants named herein.

## NATURE AND SUMMARY OF THE ACTION

1.     This is a shareholder derivative action brought by a shareholder of SunPower Corporation ("SunPower" or the "Company") on behalf of the Company against certain of its officers and directors seeking to remedy defendants' violations of law, including breaches of fiduciary duties, waste of corporate assets, and unjust enrichment that have caused substantial monetary losses to SunPower and other damages, such as to its reputation and goodwill.

2.     SunPower designs, manufactures, and markets solar electric power technologies. SunPower derives approximately 43% of its revenues through the sale of solar electric power panels and cells that it manufactures at two facilities located in the Philippines.

3.     On November 16, 2009, SunPower disclosed that it was restating its fiscal 2008 through third quarter 2009 financial results to correct unsubstantiated accounting entries from its Philippines operations related to costs of goods sold ("COGS").  Specifically, SunPower disclosed that: (i) COGS for the first quarter 2009 was overstated by $1 million; (ii) COGS for the second quarter 2009 was understated by $14 million; (iii) COGS for the third quarter 2009 was understated by $2 million; and (iv) $9 million of COGS accounting entries recorded during fiscal 2009 should have been recorded during fiscal 2008.

4.     The defendants, SunPower's directors and officers, made, approved, and certified improper financial statements contained within SunPower's fiscal 2008 through 2009 quarterly and annual financial reports filed with the Securities and Exchange Commission ("SEC"). Moreover, certain defendants on SunPower's Audit Committee of the Board of Directors ("Board") were responsible for reviewing and discussing the improper financial information included in SunPower's earnings announcements and reviewing the effectiveness and adequacy of SunPower's internal controls over financial reporting. The improper revenue recognition and resulting restatement were the result of these defendants' breaches of fiduciary duty.

1    5.    In sum, as a result of the defendants' breaches of fiduciary duties, SunPower

2  disseminated almost two years worth of improper financial results. These improper financial results

3  have devastated SunPower's credibility and exposed the Company to damages.

4                          **JURISDICTION AND VENUE**

5    6.    This Court has jurisdiction over all causes of action asserted herein pursuant to 28

6  U.S.C. §1332(a)(2) in that plaintiff and defendants are citizens of different states and the amount in

7  controversy exceeds $75,000, exclusive of interest and costs.  This action is not a collusive action

8  designed to confer jurisdiction on a court of the United States that it would not otherwise have.

9    7.    This Court has jurisdiction over each defendant named herein because each defendant

10  is either a corporation that conducts business in and maintains operations in this District, or is an

11  individual who has sufficient minimum contacts with this District so as to render the exercise of

12  jurisdiction by the District courts permissible under traditional notions of fair play and substantial

13  justice.

14    8.    Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) Sunpower

15  maintains its principal place of business in this District; (ii) one or more of the defendants either

16  resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions

17  and wrongs complained of herein, including the defendants' primary participation in the wrongful

18  acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to

19  Sunpower, occurred in this District; and (iv) defendants have received substantial compensation in

20  this District by doing business here and engaging in numerous activities that had an effect in this

21  District.

22                          **INTRADISTRICT ASSIGNMENT**

23    9.    A substantial portion of the transactions and wrongdoings which give rise to the

24  claims in this action occurred in the county of Santa Clara, and as such, this action is properly

25  assigned to the San Jose division of this Court.

26

27

28

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## THE PARTIES

### A. Plaintiff Shareholder

10.     Plaintiff Richard Logan was a shareholder of SunPower at the time of the wrongdoing complained of and has continuously been a shareholder and is a current SunPower shareholder. Plaintiff is a citizen of Arizona.

### B. Nominal Defendant SunPower

11.     Nominal defendant SunPower is a Delaware corporation with its principal executive offices located at 3939 North First Street, San Jose, California.

### C. Individual Defendants

12.     Defendant Thomas H. Werner ("Werner") is SunPower's Chief Executive Officer and a director and has been since June 2003. Defendant Werner knowingly or recklessly: (i) made improper financial statements that did not properly account for SunPower's COGS related to its Philippines operations; and (ii) failed to maintain adequate internal controls with respect to SunPower's financial reporting. SunPower paid Werner the following compensation:

| Fiscal Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation |
|---|---|---|---|---|---|
| 2008 | $362,466 | $3,104,598 | $160,571 | $678,915 | $9,307 |

Defendant Werner is a citizen of California.

13.     Defendant Dennis V. Arriola ("Arriola") is SunPower's Senior Vice President and Chief Financial Officer and has been since November 2008. Defendant Arriola knowingly or recklessly: (i) made improper financial statements that did not properly account for SunPower's COGS related to its Philippines operations; and (ii) failed to maintain adequate internal controls with respect to SunPower's financial reporting. SunPower paid Arriola the following compensation:

| Fiscal Year | Salary | Bonus | Stock Awards | Option Awards | All Other Compensation |
|---|---|---|---|---|---|
| 2008 | $57,212 | $300,000 | $53,004 | $23,647 | $12,686 |

Defendant Arriola is a citizen of California.

14.     Defendant Emmanuel T. Hernandez ("Hernandez") was SunPower's Chief Financial Officer from April 2005 to November 2008 and served in a transition role through January 2009.

- 3 -

1   Hernandez was also SunPower's Vice President, Finance during at least fiscal 2008.  Defendant

2   Hernandez knowingly or recklessly: (i) made improper financial statements that did not properly

3   account for SunPower's COGS related to its Philippines operations; and (ii) failed to maintain

4   adequate internal controls with respect to SunPower's financial reporting.  SunPower paid Hernandez

5   the following compensation:

| Fiscal Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation |
|---|---|---|---|---|---|
| 2008 | $336,533 | $1,015,340 | $35,039 | $236,933 | $6,851 |

8   Defendant Hernandez is a citizen of California.

9       15.    Defendant W. Steve Albrecht ("Albrecht") is a SunPower director and has been since

10  2005.  Albrecht is also Chairman of SunPower's Audit Committee and has been since at least 2008.

11  Albrecht was a member of SunPower's Compensation Committee from at least 2008 to at least

12  March 2009.  Defendant Albrecht knowingly or recklessly: (i) reviewed and approved improper

13  financial statements that did not properly account for SunPower's COGS related to its Philippines

14  operations; (ii) reviewed and approved ineffective internal controls over financial reporting; and (iii)

15  made improper financial statements that did not properly account for COGS related to its Philippines

16  operations.  Defendant Albrecht is a citizen of Utah.

17      16.    Defendant Betsy S. Atkins ("Atkins") is a SunPower director and has been since 2005.

18  Atkins was a member of SunPower's Audit Committee from at least 2008 to at least March 2009.

19  Defendant Atkins knowingly or recklessly: (i) reviewed and approved improper financial statements

20  that did not properly account for SunPower's COGS related to its Philippines operations; (ii)

21  reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper

22  financial statements that did not properly account for COGS related to its Philippines operations.

23  Defendant Atkins is a citizen of Florida.

24      17.    Defendant Pat Wood, III ("Wood") is a SunPower director and has been since 2005.

25  Wood is also a member of SunPower's Audit Committee and has been since at least 2008.

26  Defendant Wood knowingly or recklessly: (i) reviewed and approved improper financial statements

27  that did not properly account for SunPower's COGS related to its Philippines operations; (ii)

28  reviewed and approved ineffective internal controls over financial reporting; and (iii) made improper

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

1  financial statements that did not properly account for COGS related to its Philippines operations.

2  Defendant Wood is a citizen of Texas.

3      18.   Defendant Thomas R. McDaniel ("McDaniel") is a SunPower director and has been

4  since February 2009.  McDaniel is also a member of SunPower's Audit Committee and has been

5  since February 2009.  Defendant McDaniel knowingly or recklessly: (i) reviewed and approved

6  improper financial statements that did not properly account for SunPower's COGS related to its

7  Philippines operations; (ii) reviewed and approved ineffective internal controls over financial

8  reporting; and (iii) made improper financial statements that did not properly account for COGS

9  related to its Philippines operations.  Defendant McDaniel is a citizen of California.

10     19.   Defendant Thurman J. Rodgers ("Rodgers") is SunPower's Chairman of the Board and

11  has been since 2002.  During times relevant, defendant Rodgers knowingly or recklessly made

12  improper financial statements that did not properly account for SunPower's COGS related to its

13  Philippines operations.  Defendant Rodgers is a citizen of California.

14     20.   Defendant Uwe-Ernst Bufe ("Bufe") is a SunPower director and has been since

15  August 2008. During times relevant, defendant Bufe knowingly or recklessly made improper

16  financial statements that did not properly account for SunPower's COGS related to its Philippines

17  operations.  Defendant Bufe is a citizen of New York.

18  **1.    "Director Defendants"**

19     21.   The defendants identified in ¶¶12, 15-20 are referred to herein as the "Director

20  Defendants."

21  **2.    "Officer Defendants"**

22     22.   The defendants identified in ¶¶12-14 are referred to herein as the "Officer

23  Defendants."

24  **3.    "Audit Committee Defendants"**

25     23.   The defendants identified in ¶¶15-18 are referred to herein as the "Audit Committee

26  Defendants."

27     24.   Collectively, the Director Defendants, the Officer Defendants, and the Audit

28  Committee Defendants are referred to herein as the "Individual Defendants."

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## DUTIES OF THE INDIVIDUAL DEFENDANTS

### A. Fiduciary Duties

25. By reason of their positions as officers, directors, and/or fiduciaries of SunPower and because of their ability to control the business and corporate affairs of SunPower, the Individual Defendants owed SunPower and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage SunPower in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of SunPower and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit.

26. Each director and officer of the Company owes to SunPower and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing. In addition, as officers and/or directors of a publicly held company, the Individual Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's operations, performance, management, projections, and forecasts so that the market price of the Company's stock would be based on truthful and accurate information. During 2008, the Board met fourteen times.

### B. Audit Committee Duties

27. In addition to these duties, the Audit Committee Defendants owed specific duties to SunPower, under its charter in effect during 2008 and 2009, to review and approve quarterly and annual financial statements, earnings press releases, and SunPower's internal controls over financial reporting. During 2008, the Audit Committee met ten times. In particular, the Audit Committee's charter in effect during 2008 and 2009 provided as follows:

### A. Review and Reporting Procedures

1. review (i) Major issues regarding accounting principles and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles or practices as suggested by management or the independent auditor; (ii) Major issues as to the adequacy of the Company's internal controls and any special compensating procedures or audit steps adopted in light of material control deficiencies, including significant deficiencies and material

- 6 -

weaknesses in the Company's internal control over financial reporting; (iii) Analyses prepared by management and/or the independent auditor setting forth significant financial reporting issues and judgments made in connection with preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements; (iv) The effect of regulatory and accounting initiatives, as well as off-balance sheet structures, on the financial statements;

2.      discuss with management and the independent auditor the Company's annual audited financial statements and quarterly unaudited financial statements and review the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations" prior to filing the Company's Annual Report on From 10-K and Quarterly Reports on Form 1 O-Q, respectively, with the SEC and, with respect to the annual financial statements, the appropriateness and quality of accounting and auditing principles and practices as well as the adequacy of internal controls that could significantly affect the Company's financial statements;

3.      discuss, generally, with management and the independent auditor, the Company's earnings press releases (paying particular attention to the use of any "pro forma" or "adjusted" non-GAAP information), as well as financial information and earnings guidance provided to analysts and rating agencies, provided, however, that the Audit Committee need not discuss in advance each instance in which the Company may provide earnings guidance except that if an earnings guidance news release is issued, such release shall be discussed in advance with the Chairman of the Committee or in the event of his or her unavailability, another Committee member;

4.      discuss policies with respect to risk assessment and risk management, including: (i) the guidelines and policies governing the process used by the Company's CEO and senior management to access and manage the Company's exposure to risk; and (ii) the major financial risk exposures and the steps management has taken to monitor and control such exposures;

5.      report regularly to the Board a summary of matters addressed at Audit Committee meetings, any issues that arise with respect to the quality or integrity of the Company's financial statements, the Company's compliance with legal or regulatory requirements, the performance and independence of the Company's independent auditor and the performance of the Company's internal audit function;

6.      review the independent financial statement and internal control audit by: (i) reviewing the independent auditor's proposed audit scope and approach; (ii) discussing with the Company's independent auditor the financial statements, the Company's internal control over financial reporting, and the audit findings, including any significant adjustments, management judgments and accounting estimates, significant new accounting policies and disagreements with management, any deficiencies, significant deficiencies, or material weaknesses, and any other matters described in SAS No. 61 and 90; and (iii) reviewing reports submitted to the Committee by the independent auditor in accordance with applicable SEC Rules;

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

7.     oversee a post-audit review of the financial statements and audit and control findings, including any suggestions for improvements provided to management by the independent auditor, and management's response to such suggestions;

8.     direct the Company's independent auditor to review before filing with the SEC the Company's interim financial statements included in quarterly reports on Form 10 Q, using professional standards and procedures for conducting such reviews;

9.     review before release the unaudited quarterly operating results in the Company's quarterly earnings release;

10.     recommend to the Board whether to include the annual audited financial statements in the Company's annual report on Form 10-K;

11.     review and discuss with management and the independent auditor ( a ) the adequacy and effectiveness of the Company's internal controls over financial reporting (including any significant deficiencies, material weaknesses and significant changes in internal controls reported to the Committee by management and any fraud involving management or other employees who have a significant role in the Company's internal controls), ( b ) the results of the internal control audit by the independent auditor, and ( c ) the effectiveness of the Company's disclosure controls and procedures; and

12.     review and discuss with management and the independent auditor (i) any material financial or non-financial arrangements that do not appear on the Company's financial statements, (ii) any transactions or courses of dealing with parties related to the Company that are significant in size or involve terms or other aspects that differ from those that would likely be negotiated with independent parties, and that are relevant to an understanding of the Company's financial statements, and (iii) material financial risks that are designated as such by management or the independent auditor.

**B.     Control, Access, and Authority**

28.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of SunPower, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.

29.     Because of their advisory, executive, managerial, and directorial positions with SunPower, each of the Individual Defendants had access to adverse, non-public information about the financial condition, operations, and improper representations of SunPower, including information regarding SunPower's COGS related to its Philippines operations.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

30.   At all times relevant hereto, each of the Individual Defendants was the agent of each of the other Individual Defendants and of SunPower, and was at all times acting within the course and scope of such agency.

C.   **Reasonable and Prudent Supervision**

31.   To discharge their duties, the officers and directors of SunPower were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of SunPower were required to, among other things:

(a)   ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the investing public;

(b)   conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)   properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's financial results;

(d)   remain informed as to how SunPower conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiry in connection therewith, and take steps to correct such conditions or practices and make such disclosures as necessary to comply with securities laws; and

(e)   ensure that the Company was operated in a diligent, honest, and prudent manner in compliance with all applicable laws, rules and regulations.

D.   **Breaches of Duties**

32.   Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duty of loyalty and good faith and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the

- 9 -

1   Individual Defendants complained of herein involves a knowing and culpable violation of their

2   obligations as directors and officers of SunPower, the absence of good faith on their part, and a

3   reckless disregard for their duties to the Company and its shareholders that the Individual Defendants

4   were aware or should have been aware posed a risk of serious injury to the Company. The conduct

5   of the Individual Defendants who were also officers and/or directors of the Company have been

6   ratified by the remaining Individual Defendants who collectively comprised all of SunPower's Board.

7       33.    The Individual Defendants breached their duty of loyalty and good faith by allowing

8   defendants to cause, or by themselves causing, the Company to misrepresent its financial results and,

9   in particular, COGS related to its Philippines operations, as detailed herein below, and by failing to

10  prevent the Individual Defendants from taking such illegal actions. In addition, as a result of

11  defendants' illegal actions and course of conduct, the Company is now the subject of class action

12  lawsuits that allege violations of securities laws. As a result, SunPower has expended, and will

13  continue to expend, significant sums of money.

14              **CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION**

15      34.    In committing the wrongful acts alleged herein, the Individual Defendants have

16  pursued, or joined in the pursuit of, a common course of conduct, and have acted in concert with and

17  conspired with one another in furtherance of their common plan or design. In addition to the

18  wrongful conduct herein alleged as giving rise to primary liability, the Individual Defendants further

19  aided and abetted and/or assisted each other in breaching their respective duties.

20      35.    During all times relevant hereto, the Individual Defendants collectively and

21  individually initiated a course of conduct that was designed to and did: (i) conceal the fact that the

22  Company was improperly misrepresenting its financial results including COGS related to its

23  Philippines operations; (ii) enhance the Individual Defendants' executive and directorial positions at

24  SunPower and the profits, power, and prestige that the Individual Defendants enjoyed as a result of

25  holding these positions; and (iii) deceive the investing public, including shareholders of SunPower,

26  regarding the Individual Defendants' management of SunPower's operations and the Company's

27  financial results that had been misrepresented by defendants. In furtherance of this plan, conspiracy,

28

1    and course of conduct, the Individual Defendants collectively and individually took the actions set

2    forth herein.

3        36.    The Individual Defendants engaged in a conspiracy, common enterprise, and/or

4    common course of conduct. During this time, the Individual Defendants caused the Company to

5    issue improper financial results based upon improperly recorded COGS.

6        37.    The purpose and effect of the Individual Defendants' conspiracy, common enterprise,

7    and/or common course of conduct was, among other things, to disguise the Individual Defendants'

8    violations of law, breaches of fiduciary duty, waste of corporate assets, and unjust enrichment; and to

9    conceal adverse information concerning the Company's operations, financial condition, and future

10   business prospects.

11       38.    The Individual Defendants accomplished their conspiracy, common enterprise, and/or

12   common course of conduct by causing the Company to purposefully, recklessly, or negligently

13   release improper statements. Because the actions described herein occurred under the authority of

14   the Board, each of the Individual Defendants was a direct, necessary, and substantial participant in

15   the conspiracy, common enterprise, and/or common course of conduct complained of herein.

16       39.    Each of the Individual Defendants aided and abetted and rendered substantial

17   assistance in the wrongs complained of herein. In taking such actions to substantially assist the

18   commission of the wrongdoing complained of herein, each Individual Defendant acted with

19   knowledge of the primary wrongdoing, substantially assisted the accomplishment of that

20   wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

21                              **FACTUAL BACKGROUND**

22       40.    SunPower designs, manufactures, and markets solar electric power technologies.

23   SunPower operates two business segments: the Systems Segment and the Components Segment.

24       41.    The Systems Segment generally concerns the sale of solar power systems directly to

25   system owners and developers. The sale of a solar power system includes services such as

26   development, engineering, procurement of permits and equipment, construction management, access

27   to financing, monitoring and maintenance.

28

42.     The Components Segment concerns the sale of solar power products, including solar cells and solar panels.  A solar cell is a semiconductor device that directly converts sunlight into direct current electricity.  A solar panel is a collection of solar cells electronically connected together and encapsulated in a weatherproof package.  During fiscal 2008, the revenue generated by the Components Segment represented 43% of the Company's total revenue.

43.     The solar cells sold by the Components Segment are manufactured at two facilities located near Manila in the Philippines.  The first facility, referred to as FAB1, has a total rated manufacturing capacity of 108 megawatts per year and began operations during the fall of 2004.  The second facility, referred to as FAB2, has a total rated manufacturing capacity of 306 megawatts per year and began operation during the summer of 2007.  SunPower currently plans to construct a third manufacturing facility in Malaysia, which will begin production in 2010.

44.     The solar panels sold by the Components Segment are manufactured at a solar panel assembly facility also located in the Philippines.

45.     As of October 2008, SunPower had approximately 4,000 total employees.  Of this amount, 3,000 employees were located in the Philippines.

### THE RESTATEMENT

46.     On November 16, 2009, SunPower issued a press release disclosing that an internal review of the Philippines manufacturing operations had revealed unsubstantiated accounting entries. These accounting entries were COGS entries that affected SunPower's previously issued fiscal 2008 through third quarter 2009 financial statements.  In particular, the internal investigation determined that: (i) COGS for the first quarter 2009 was overstated by $1 million; (ii) COGS for the second quarter 2009 was understated by $14 million; (iii) COGS for the third quarter 2009 was understated by $2 million; and (iv) $9 million of COGS accounting entries recorded during fiscal 2009 should have been recorded during fiscal 2008.

47.     SunPower's November 16, 2009 press release disclosed further that "the company's previously issued interim financial statements for each of the 2009 quarterly periods, the previously reported financial results for the fiscal year ending December 28, 2008, the financial information in its quarterly reports on Form 10-Q for the 2009 quarters, the financial information in the 2008 annual

- 12 -

report on Form 10-K, and the guidance provided by the company for the 2009 fiscal year, *should no longer be relied upon*." The press release disclosed further that "there can be no assurance that broader issues do not exist."

## IMPROPER FINANCIAL STATEMENTS

48.     As a result of the improperly accounted for COGS related to SunPower's Philippines operations, the Company's fiscal 2008 through third quarter 2009 financial statements were improper.  The Audit Committee Defendants knowingly or recklessly reviewed and approved SunPower's fiscal 2008 and 2009 annual and interim financial reports filed by the Company on Form 10-K and Forms 10-Q.  Moreover, defendants Werner, Arriola, Rodgers, Albrecht, Atkins, Bufe, McDaniel, and Wood knowingly or recklessly made improper statements within the fiscal 2008 Form 10-K.

49.     Defendants Werner and Hernandez knowingly or recklessly made improper statements contained in the Forms 10-Q filed for SunPower's fiscal first through third quarter 2008 and certified those filings under the Sarbanes-Oxley Act of 2002 ("SOX").  Defendants Werner and Arriola knowingly or recklessly made improper statements contained in the fiscal 2008 Form 10-K and the first through third quarter 2009 Forms 10-Q and certified those filings under SOX.  The improper certifications stated as follows:

I, [Werner, Hernandez, and Arriola], certify that:

1. I have reviewed this Annual Report on Form 10-K of SunPower Corporation;

2. Based on my knowledge, this report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;

3. Based on my knowledge, the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this report;

4. The registrant's other certifying officer(s) and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-15(e) and 15d-15(e)) and internal control over financial reporting (as defined in Exchange Act Rules 13a-15(f) and 15d-15(f)) for the registrant and have:

(a)     Designed such disclosure controls and procedures, or caused such disclosure controls and procedures to be designed under our supervision, to ensure

- 13 -

that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this report is being prepared;

(b)    Designed such internal control over financial reporting, or caused such internal control over financial reporting to be designed under our supervision, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with generally accepted accounting principles;

(c)    Evaluated the effectiveness of the registrant's disclosure controls and procedures and presented in this report our conclusions about the effectiveness of the disclosure controls and procedures, as of the end of the period covered by this report based on such evaluation; and

(d)    Disclosed in this report any change in the registrant's internal control over financial reporting that occurred during the registrant's most recent fiscal quarter (the registrant's fourth fiscal quarter in the case of an annual report) that has materially affected, or is reasonably likely to materially affect, the registrant's internal control over financial reporting; and

5. The registrant's other certifying officer(s) and I have disclosed, based on our most recent evaluation of internal control over financial reporting, to the registrant's auditors and the audit committee of the registrant's board of directors (or persons performing the equivalent functions):

(a)    All significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the registrant's ability to record, process, summarize and report financial information; and

(b)    Any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting.

50.    The improper financial information regarding SunPower's COGS related to its Philippines operations was also included in earnings press release issued on April 17, 2008; July 17, 2008; October 16, 2008; January 29, 2009; April 23, 2009; July 23, 2009; and October 22, 2009. The Audit Committee Defendants reviewed and approved these improper earnings press releases.

## DAMAGES TO SUNPOWER CAUSED BY THE INDIVIDUAL DEFENDANTS

51.    As a result of the Individual Defendants' wrongful conduct, SunPower disseminated improper financial statements that misrepresented COGS related to its Philippines operations. These improper statements have devastated SunPower's credibility. Additionally, SunPower is now the subject of several shareholder class action lawsuits alleging securities laws violations in connection

- 14 -

1   with the improper financial reporting.  The Company will face substantial costs in connection with

2   these lawsuits.

3       52.    Further, as a direct and proximate result of the Individual Defendants' conduct,

4   SunPower has expended and will continue to expend significant sums of money.  Such expenditures

5   include, but are not limited to:

6       (a)    costs incurred in connection with investigating and restating SunPower's fiscal

7   2008 through third quarter 2009 financial results;

8       (b)    costs incurred in investigating and defending SunPower and certain officers in

9   the class action lawsuits, plus potentially hundreds of millions of dollars in settlement or to satisfy an

10  adverse judgment; and

11      (c)    costs incurred from compensation and benefits paid to the defendants who

12  have breached their duties to SunPower.

13      53.    Moreover, these actions have irreparably damaged SunPower's corporate image and

14  goodwill.  For at least the foreseeable future, SunPower will suffer from what is known as the "liar's

15  discount," a term applied to the stocks of companies who have been implicated in illegal behavior

16  and have misled the investing public, such that SunPower's ability to raise equity capital or debt on

17  favorable terms in the future is now impaired.

18  **DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

19      54.    Plaintiff brings this action derivatively in the right and for the benefit of SunPower to

20  redress injuries suffered, and to be suffered, by SunPower as a direct result of breaches of fiduciary

21  duty, waste of corporate assets, and unjust enrichment, as well as the aiding and abetting thereof, by

22  the Individual Defendants.  SunPower is named as a nominal defendant solely in a derivative

23  capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not

24  otherwise have.

25      55.    Plaintiff will adequately and fairly represent the interests of SunPower in enforcing

26  and prosecuting its rights.

27      56.    Plaintiff was a shareholder of SunPower at the time of the wrongdoing complained of

28  and has continuously been a shareholder and is a current SunPower shareholder.

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

57.    The current Board of SunPower consists of the following seven individuals: defendants Werner, Rodgers, Albrecht, Atkins, Wood, Bufe, and McDaniel.

**A.    Demand Futility as to Defendant Werner**

58.    As alleged above, defendant Werner breached his fiduciary duty of loyalty and good faith by making improper financial statements regarding SunPower's COGS related to its Philippines operations. Defendant Werner also failed to maintain effective internal controls over SunPower's financial reporting. As a result, Werner faces a sufficiently substantial likelihood of liability for his breach of fiduciary duty. Accordingly, demand is futile as to defendant Werner.

59.    The principal professional occupation of defendant Werner is his employment with SunPower, pursuant to which he received and continues to receive substantial monetary compensation and other benefits.  Specifically, SunPower paid defendant Werner the following compensation:

| Fiscal Year | Salary | Stock Awards | Option Awards | Non-Equity Incentive Plan Compensation | All Other Compensation |
|---|---|---|---|---|---|
| 2008 | $362,466 | $3,104,598 | $160,571 | $678,915 | $9,307 |

Accordingly, defendant Werner is incapable of impartially considering a demand to commence and vigorously prosecute this action because he has an interest in maintaining his principal occupation and the substantial compensation he receives in connection with that occupation. Demand is futile as to defendant Werner.

60.    If defendant Werner were to bring this action against himself, he would thereby expose his own misconduct, which underlies allegations against him contained in class action complaints for violations of securities law, which admissions would impair his defense of the class actions and greatly increase the probability of his personal liability in the class actions.  In essence, he would be forced to take positions contrary to the defenses he will likely assert in the securities class actions. This he will not do. Thus, demand is futile.

**B.    Demand Futility as to the Audit Committee**

61.    Defendants Albrecht, Atkins, Wood, and McDaniel, as members of the Audit Committee, were responsible under the Audit Committee charter in effect during 2008 and 2009 for

- 16 -

1  reviewing and approving quarterly and annual financial statements, earnings press releases, and

2  SunPower's internal controls over financial reporting.  Despite these duties, the Audit Committee

3  Defendants knowingly or recklessly reviewed and approved false financial statements that did not

4  properly account for SunPower's COGS related to its Philippines operations.  The Audit Committee

5  Defendants also reviewed and approved SunPower's ineffective internal controls over financial

6  reporting.  Accordingly, these defendants face a sufficiently substantial likelihood of liability for

7  breach of their fiduciary duty of loyalty and good faith.  Any demand upon these defendants is futile.

8       **C.     Demand Futility as to All Director Defendants**

9       62.     Defendants Werner, Rodgers, Albrecht, Atkins, Wood, Bufe, and McDaniel breached

10  their fiduciary duty of loyalty and good faith by making false financial statements in SunPower's

11  fiscal 2008 annual report on Form 10-K that did not properly account for SunPower's COGS related

12  to its Philippines operations.  As a result, these defendants face a sufficiently substantial likelihood

13  of liability for their breach of fiduciary duties.  Accordingly, demand is futile as to these defendants.

14       63.     Moreover, the acts complained of constitute violations of the fiduciary duties owed by

15  SunPower's officers and directors and these acts are incapable of ratification.

16       64.     Each of the defendant directors of SunPower authorized and/or permitted the

17  improper statements disseminated directly to the public or made directly to securities analysts and

18  which were made available and distributed to shareholders, authorized and/or permitted the issuance

19  of various of the improper statements and are principal beneficiaries of the wrongdoing alleged

20  herein, and thus could not fairly and fully prosecute such a suit even if such suit was instituted by

21  them.

22       65.     Any suit by the current directors of SunPower to remedy these wrongs would likely

23  expose defendants Werner, Arriola, and SunPower to further violations of the securities laws, thus,

24  they are hopelessly conflicted in making any supposedly independent determination whether to sue

25  themselves.

26       66.     SunPower has been and will continue to be exposed to significant losses due to the

27  wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed

28

- 17 -

1    any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt

2    to recover for SunPower any part of the damages SunPower suffered and will suffer thereby.

3         67.    If SunPower's current and past officers and directors are protected against personal

4    liability for their acts of mismanagement and breach of fiduciary duty alleged in this Complaint by

5    directors' and officers' liability insurance, they caused the Company to purchase that insurance for

6    their protection with corporate funds, *i.e.*, monies belonging to the stockholders of SunPower.

7    However, the directors' and officers' liability insurance policies covering the defendants in this case

8    contain provisions that eliminate coverage for any action brought directly by SunPower against these

9    defendants, known as the "insured versus insured exclusion." As a result, if these directors were to

10   cause SunPower to sue themselves or certain of the officers of SunPower, there would be no

11   directors' and officers' insurance protection and thus, this is a further reason why they will not bring

12   such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such

13   insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is

14   no directors' and officers' liability insurance, then the current directors will not cause SunPower to

15   sue the defendants named herein, since they will face a large uninsured liability and lose the ability to

16   recover for the company from the insurance.

17        68.    Moreover, despite the Individual Defendants having knowledge of the claims and

18   causes of action raised by plaintiff, the current Board has failed and refused to seek to recover for

19   SunPower for any of the wrongdoing alleged by plaintiff herein.

20        69.    Plaintiff has not made any demand on the shareholders of Sunpower to institute this

21   action since such demand would be a futile and useless act for at least the following reasons:

22             (a)    Sunpower is a publicly held company with over 96 million shares outstanding

23   and thousands of shareholders;

24             (b)    making demand on such a number of shareholders would be impossible for

25   plaintiff who has no way of finding out the names, addresses, or phone numbers of shareholders; and

26             (c)    making demand on all shareholders would force plaintiff to incur excessive

27   expenses, assuming all shareholders could be individually identified.

28

- 18 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## COUNT I

**Against Defendants Werner, Arriola, and Hernandez for Breach of Fiduciary Duties of
Due Care and Loyalty and Good Faith**

70.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

71.     Defendants Werner, Arriola, and Hernandez owed and owe SunPower fiduciary obligations. By reason of his fiduciary relationships, these defendants owed and owe SunPower the highest obligation of due care and loyalty and good faith.

72.     Defendants Werner, Arriola, and Hernandez violated and breached their fiduciary duties of care and loyalty and good faith by knowingly or recklessly making and improperly certifying false annual and quarterly financial statements that did not properly account for SunPower's COGS related to its Philippines operations. These improper financial statements were included in SunPower's fiscal 2008 through third quarter 2009 quarterly and annual reports on Forms 10-Q and 10-K and in SunPower's fiscal 2008 through third quarter 2009 earnings press releases. Defendants Werner, Arriola, and Hernandez also knowingly or recklessly failed to maintain a sufficient level of internal controls over financial reporting to prevent the issuance of improper financial information.

73.     Defendants Werner, Arriola, and Hernandez's actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

74.     As a direct and proximate result of defendants Werner, Arriola, and Hernandez's failure to perform their fiduciary obligations, SunPower has sustained significant damages. As a result of the misconduct alleged herein, these defendants are liable to the Company.

## COUNT II

**Against the Audit Committee Defendants for Breach of the Fiduciary Duty of Loyalty and
Good Faith**

75.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

- 19 -

76. The Audit Committee Defendants, defendants Albrecht, Atkins, Wood, and McDaniel, owed and owe SunPower fiduciary obligations. Additionally, the Audit Committee Defendants owed specific duties under the Audit Committee charters in effect during fiscal 2008 through 2009 to SunPower to review and discuss SunPower's quarterly and annual financial results and earnings press releases and to review the effectiveness and adequacy of SunPower's internal control structure. By reason of their fiduciary relationships, these defendants owed and owe SunPower the highest obligation of loyalty and good faith.

77. The Audit Committee Defendants violated and breached their fiduciary duty of loyalty and good faith by knowingly or recklessly: (i) reviewing and approving false financial statements included in SunPower's fiscal 2008 through third quarter 2009 financial results that did not properly account for SunPower's COGS related to its Philippines operations; and (iii) reviewing and approving ineffective internal controls over financial reporting.

78. The Audit Committee Defendants' actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

79. As a direct and proximate result of the Audit Committee Defendants' failure to perform their fiduciary obligations, SunPower has sustained significant damages. As a result of the misconduct alleged herein, the Audit Committee Defendants are liable to the Company.

### COUNT III

**Against Defendants Werner, Rodgers, Albrecht, Atkins, Wood, Bufe, and McDaniel for Breach of the Fiduciary Duties of Loyalty and Good Faith**

80. Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

81. Defendants Werner, Rodgers, Albrecht, Atkins, Wood, Bufe, and McDaniel owed and owe SunPower fiduciary obligations.

82. Defendants Werner, Rodgers, Albrecht, Atkins, Wood, Bufe, and McDaniel violated and breached their fiduciary duties of loyalty and good faith by knowingly or recklessly signing improper financial statements included in SunPower's fiscal 2008 annual report on Form 10-K that did not properly account for SunPower's COGS related to its Philippines operations.

- 20 -

83.     Defendants Werner, Rodgers, Albrecht, Atkins, Wood, Bufe, and McDaniel's actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

84.     As a direct and proximate result of defendants Werner, Rodgers, Albrecht, Atkins, Wood, Bufe, and McDaniel's failure to perform their fiduciary obligations, SunPower has sustained significant damages.  As a result of the misconduct alleged herein, these defendants are liable to the Company.

COUNT IV

**Against All Defendants for Waste of Corporate Assets**

85.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

86.     As a result of the misconduct described above, the Individual Defendants wasted corporate assets: (i) by failing to maintain sufficient internal controls over financial reporting to prevent the issuance of improper financial results that will need to be restated;  (ii) by failing to properly consider the interests of the Company and its public shareholders; (iii) by failing to conduct proper supervision; (iv) by paying undeserved incentive compensation to certain of its executive officers; and (v) by incurring potentially hundreds of millions of dollars of legal liability and/or legal costs to defend defendants' unlawful actions.

87.     As a result of the waste of corporate assets, the Individual Defendants are liable to the Company.

88.     Plaintiff, on behalf of SunPower, has no adequate remedy at law.

COUNT V

**Against All Defendants for Unjust Enrichment**

89.     Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

90.     By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of SunPower.  The Individual Defendants were

- 21 -

1   unjustly enriched as a result of the compensation and director remuneration they received while

2   breaching fiduciary duties owed to SunPower.

3         91.     Plaintiff, as a shareholder and representative of SunPower, seeks restitution from

4   these defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits

5   and other compensation obtained by these defendants, and each of them, from their wrongful conduct

6   and fiduciary breaches.

7         92.     Plaintiff, on behalf of SunPower, has no adequate remedy at law.

8                                      **PRAYER FOR RELIEF**

9   WHEREFORE, plaintiff demands for a judgment as follows:

10        A.     Against all of the Individual Defendants and in favor of the Company for the amount

11  of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary

12  duties, waste of corporate assets, and unjust enrichment;

13        B.     Directing SunPower to take all necessary actions to reform and improve its corporate

14  governance and internal procedures to comply with applicable laws and to protect SunPower and its

15  shareholders from a repeat of the damaging events described herein, including, but not limited to,

16  putting forward for shareholder vote, resolutions for amendments to the Company's By-Laws or

17  Articles of Incorporation and taking such other action as may be necessary to place before

18  shareholders for a vote the following Corporate Governance Policies:

19             1.     a proposal to strengthen the Board's supervision of operations and develop and

20  implement procedures for greater shareholder input into the policies and guidelines of the Board;

21             2.     a provision to permit the shareholders of SunPower to nominate at least three

22  candidates for election to the Board; and

23             3.     a proposal to strengthen SunPower's internal controls over financial reporting

24  and specifically with respect to COGS.

25        C.     Extraordinary equitable and/or injunctive relief as permitted by law, equity and state

26  statutory provisions sued hereunder, including attaching, impounding, imposing a constructive trust

27  on or otherwise restricting defendants' assets so as to assure that plaintiff on behalf of SunPower has

28  an effective remedy;

1        D.     Awarding to SunPower restitution from the defendants, and each of them, and

2    ordering disgorgement of all profits, benefits and other compensation obtained by the defendants;

3        E.     Awarding to plaintiff reasonable attorneys' fees, consultant and expert fees, costs and

4    expenses; and

5        F.     Granting such other and further relief as the Court deems just and proper.

6    **JURY DEMAND**

7        Plaintiff demands a trial by jury.

8    DATED:  December 4, 2009           ROBBINS UMEDA LLP

9                              MARC M. UMEDA

                             GEORGE C. AGUILAR

10                             ARSHAN AMIRI

                             DAVID L. MARTIN

11

12                                   MARC M. UMEDA

13

14                             600 B Street, Suite 1900

                          San Diego, CA 92101

15                             Telephone:  (619) 525-3990

                          Facsimile:  (619) 525-3991

16                             Attorneys for Plaintiff

17

18

19

20

21

22

23

24

25

26   445869

27

28

- 23 -

VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

## VERIFICATION

I, Richard Logan, hereby declare as follows:

I am a shareholder of SunPower Corporation. I was a shareholder at the time of the wrongdoing complained of and I remain a shareholder. I have retained competent counsel and I am ready, willing and able to pursue this action vigorously on behalf of SunPower Corporation. I have reviewed the Verified Shareholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets and Unjust Enrichment. Based upon discussions with and reliance upon my counsel, and as to those facts of which I have personal knowledge, the Complaint is true and correct to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Signed and Accepted:

Dated: 12/4/09

RICHARD LOGAN